'09 CIV 5211

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRY LAM, on behalf of himself and all others similarly situated,<br><br>           Plaintiff,<br><br>  vs.<br><br>DONALD J. TRUMP; TRUMP ORGANIZATION, INC.; TRUMP ORGANIZATION, LLC; TRUMP MARKS, LLC; TRUMP MARKS BAJA, LLC; IRONGATE DEVELOPMENT; IRONGATE WILSHIRE, LLC; IRONGATE CAPITAL PARTNERS, LLC; JASON GROSFELD; ADAM FISHER; RICHARD FISHER; CASEY FEDERMAN; JOSHUA CRANE; FIRST AMERICAN FUND CONTROL, INC.; CALIFORNIA FUND CONTROL, INC.; SOUTHLAND TITLE CORP.; SOUTHLAND TITLE OF SAN DIEGO; LAWYERS TITLE COMP.; LANDAMERICA TITLE COMP.; and PB IMPULSORES, S. de R.L. de C.V., BANCO J.P. MORGAN, S.A., INSTITUCION DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISION FIDUCIARIA.<br><br>           Defendant(s). | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Henry Lam ("Plaintiff"), by and through his attorneys, brings this Class Action

against Defendants Donald J. Trump; Trump Organization, Inc.; Trump Organization, LLC;

Trump Marks, LLC; Trump Marks Baja, LLC; Irongate Development; Irongate Wilshire, LLC;

Irongate Capital Partners, LLC; Jason Grosfeld; Adam Fisher; Richard Fisher; Casey Federman;

Joshua Crane; First American Fund Control, Inc.; California Fund Control, Inc.; Southland Title

Corporation; Southland Title of San Diego; Lawyers Title Company; Landamerica Title

Company; and Banco J.P. Morgan, S.A., Institucion de Banca Multiple, J.P. Morgan Grupo

Financiero, Division Fiduciaria (collectively "Defendants"), on his own behalf and on behalf of a

class consisting of all United States Citizens who purchased or paid a deposit for condominium

units at a condominium-hotel resort development marketed and sold by Defendants that was

known as the "Trump Ocean Resort Baja" in Tijuana, Republic of Mexico.  The Trump Ocean

Resort Baja was never constructed and Plaintiff and Members of the Class were never refunded

their deposits or other monies paid to Defendants.  Plaintiff alleges the following upon his own

knowledge, or where there is no personal knowledge, upon information and belief and

investigation of counsel:

## Jurisdiction and Venue

1.      This Court has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in

controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which

some members of the Class are citizens of different states than the Defendants.  *See* 28 U.S.C. §

1332(d)(2)(A).

2.      This Court has jurisdiction over the subject matter of this action pursuant to

15 U.S.C. § 1719, the Interstate Land Sales Full Disclosure Act.

3.      This Court has supplemental jurisdiction over the state law claims pursuant to

28 U.S.C. § 1367.  This Court has personal jurisdiction over the Defendants because they are

authorized to do business, and do conduct business, in New York.  In addition, certain

Defendants in this action, (i.e. Donald J. Trump; Trump Organization, Inc.; Trump Organization,

LLC; Trump Marks, LLC; and Trump Marks Baja, LLC) have instituted litigation in this

District, including, *inter alia*, claims for declaratory relief. The nature of the claims in that litigation could potentially impact the claims of the Class Members here.

4.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Defendant Donald Trump is a citizen of the State of New York and is thus subject to personal jurisdiction in this District.

5.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Defendants Trump Organization, Inc.; Trump Organization, LLC; Trump Marks, LLC; and Trump Marks Baja, LLC all maintain their principal place of business in the City and County of New York.

6.     Venue in this District is proper because Defendants Donald Trump; Trump Organization, Inc.; Trump Organization, LLC; Trump Marks, LLC; and Trump Marks Baja, LLC have instituted a declaratory relief action in this court that may affect the rights and claims of Plaintiff and Members of the Class.

## Nature of the Case

7.     This Action arises out of and relates to the promotion, marketing, and sale of units within, and ultimate failure of, a condominium development known as the "Trump Ocean Resort Baja," which was to have been built in Tijuana, Mexico (hereinafter "the Project" or "the Development").

8.     The Development was heavily marketed as a partnership between Defendant Donald J. Trump ("Trump") and Defendant Irongate ("Irongate"), a real estate development and investment company.

9.     Defendants marketed and sold units in the Development by representing that Trump was an active partner in the Project. In doing so, Defendants induced buyers to rely on

- 3 -

the "Trump brand" and the Trump name as a legitimate, dependable, luxury real estate developer.

10.     All Defendants benefited from the reliance buyers placed on their fraudulent representations and material omissions that the Project was to be developed by Trump.

11.     Class members paid large deposits, ranging between 10 and 30 percent of the purchase price of a condominium unit to Defendants.  Prices for the units ranged from $200,000 to over $2.5 million.

12.     Defendants unilaterally cancelled the Project in or about February 2009.

13.     Buyers were informed by Defendants that no class members would be entitled to a refund of their deposits, notwithstanding a provision in the purchase contract that provided for a full refund in the event of Defendants' failure to construct and deliver the Development.

14.     Plaintiff and Members of the Class relied on the repeated representations made by Defendants that Defendants Donald Trump and Irongate Development were the developers of the Trump Ocean Resort Baja.

15.     Plaintiff and Members of the Class suffered harm from the failure of the Trump Ocean Resort Baja to be built and the actions of Defendants in that they lost all monies paid to Defendants for condominium units that were never constructed.

### Parties

#### Plaintiff

16.     Plaintiff, Henry Lam (hereinafter "Plaintiff"), is and at all times relevant was an individual residing in the State of Arizona.

17.     Plaintiff contracted with Defendants to purchase a condominium unit within the Project on or about June 27, 2007 at a "Selection Event" held by Defendants.

18.     Plaintiff Lam paid a deposit of $99,200.00 for Suite #1002 within the Project. Plaintiff Lam was required to provide Defendants with a check for the deposit funds by June 25, 2007.

19.     Plaintiff was not provided with a Property Report for the Project until after he provided his deposit and executed the sales agreement.

**Trump Defendants**

20.     Defendant, Donald J. Trump (hereinafter "Trump"), is and at all times relevant was an individual residing in the State of New York.

21.     Defendant Trump Organization, Inc., is and at all times relevant was a New York corporation with its principal place of business at 725 Fifth Avenue, New York, New York.

22.     Defendant, Trump Organization, LLC, is and at all times relevant was a New York limited liability company with its principal place of business at 725 Fifth Avenue, New York, New York.

23.     Defendant, Trump Marks, LLC (hereinafter "Trump Marks"), is and at all times relevant was a Delaware limited liability company with its principal place of business at 725 Fifth Avenue, New York, New York.

24.     Defendant, Trump Marks Baja, LLC, (hereinafter "Trump Marks Baja"), is and at all times relevant was a Delaware limited liability company with its principal place of business at 725 Fifth Avenue, New York, New York.

25.     Defendant Trump is and at all times relevant was the President, CEO, Manager, Managing Member, director, principal, or otherwise controlled the operations and affairs of Defendants Trump Organization, Inc., Trump Organization, LLC, Trump Marks, and Trump Marks Baja.

26.     The term "Trump Defendants" as used in this Complaint shall be deemed to mean and include the Defendants previously identified herein as Trump, Trump Organization, Inc., Trump Organization, LLC, Trump Marks, and Trump Marks Baja, and each of them, inclusive.

**Irongate Defendants**

27.     Defendant Jason Grosfeld (hereinafter "Grosfeld"), is and at all times relevant was an individual residing in the State of California.

28.     Defendant Adam Fisher (hereinafter "Adam Fisher"), is and at all times relevant was an individual residing in the State of California.

29.     Defendant Richard Fisher (hereinafter "Richard Fisher"), is and at all times relevant was an individual residing in the State of California.

30.     Defendant Casey Federman (hereinafter "Federman"), is and at all times relevant was an individual residing in the State of California.

31.     Defendant Joshua Crane (hereinafter "Crane"), is and at all times relevant was an individual residing in the State of California.

32.     Defendant Irongate Development (hereinafter "Irongate") is and at all times relevant was an unknown business entity with its principal place of business at 10880 Wilshire Boulevard, Suite 1460, Los Angeles, California.

33.     Defendant Irongate Wilshire, LLC (hereinafter "Irongate Wilshire") is and at all times relevant was Delaware limited liability company with its principal place of business at 10880 Wilshire Boulevard, Suite 1460, Los Angeles, California.

34.     Defendant Irongate Capital Partners, LLC (hereinafter "Irongate Capital") is and at all times relevant was Delaware limited liability company with its principal place of business at 10880 Wilshire Boulevard, Suite 1460, Los Angeles, California.

35.     Plaintiff is informed and believes, and on that basis alleges, that Defendants Grosfeld, Adam Fisher, Richard Fisher, Federman, and Crane were the officers, directors, principals, managing partners, managing directors, managing members, and/or otherwise were responsible for the operations of Defendants Irongate, Irongate Wilshire, and Irongate Capital Partners.

36.     The term "Irongate Defendants" as used in this Complaint shall be deemed to mean and include the Defendants previously identified herein as Grosfeld, Adam Fisher, Richard Fisher, Federman, Crane, Irongate, Irongate Wilshire, and Irongate Capital Partners, and each of them, inclusive.

**PB Impulsores**

37.     Defendant PB Impulsores, S. de. R.L. de C.V. ("hereinafter "PB Impulsores") is and at all times relevant was a Mexican limited liability company formed under laws of the State of Baja California, Republic of Mexico with its principal place of business at 10880 Wilshire Boulevard, Suite 1460, Los Angeles, California.

38.     Plaintiff is informed and believes, and on that basis alleges, that PB Impulsores was at all times controlled by the Irongate Defendants.

39.     Plaintiff is informed and believes, and on that basis alleges, that PB Impulsores was formed by the Irongate Defendants in order to avoid liability for the inevitable failure of the Project.

40.     Buyers, including Plaintiff and Members of the Class, were required to contract with PB Impulsores in order to purchase condominium units in the Project.

41.     Plaintiff is informed and believes, and on that basis alleges, that the Irongate Defendants, both individuals and entities, and PB Impulsores were alter ego entities structured to evade responsibility and payment of obligations owed to Plaintiff and Members of the Class.

**Escrow Defendants**

42.     Defendant First American Fund Control, Inc. (hereinafter "First American") is and at all times relevant was a California corporation with its principal place of business at 200 Commerce, Irvine, California.

43.     Defendant California Fund Control, Inc. (hereinafter "California Fund Control") is and all times relevant was a California corporation with its principal place of business at 200 Commerce, Irvine, California.

44.     Upon information and belief, First American is the successor in interest so California Fund Control.

45.     Defendant Landamerica Title Company (hereinafter "Landamerica") is and at all times relevant was a California corporation with its principal place of business at 5600 Cox Road, Glen Allen, Virginia.

46.     Defendant Lawyers Title Company (hereinafter "Lawyers Title") is and at all times relevant was a California corporation with its principal place of business at 5600 Cox Road, Glen Allen, Virginia.

47.     Defendant Southland Title Corporation (hereinafter "Southland") is and at all times relevant was a California corporation with its principal place of business at 5600 Cox Road, Glen Allen, Virginia.

48.     Defendant Southland Title of San Diego (hereinafter "Southland San Diego") is and at all times relevant was a California corporation with its principal place of business at 5600 Cox Road, Glen Allen, Virginia.

49.     The term "Escrow Defendants" as used in this Complaint shall be deemed to mean and include the Defendants previously identified herein as First American, California Fund

- 8 -

Control, Landamerica, Lawyers Title, Southland, and Southland San Diego, and each of them, inclusive.

**Trustee Defendant**

50.     Defendant Banco J.P. Morgan, S.A., Institución de Banca Múltiple, J.P. Morgan Grupo Financiero, División Fiduciaria (hereinafter "Banco J.P. Morgan") is and at all times relevant was a Mexican corporation with its principal place of business at Paseo de las Palmas No. 405, Piso 14, Torre Optima I, Colonia Lomas de Chapultepec, C.P. 11500, Mexico, D.F.

51.     Pursuant to the contracts entered into by Plaintiff and Members of the Class, Banco J.P. Morgan was to hold the land and condominium units of the Project in trust for the benefit of buyers in order to comply with Mexican land ownership laws.

52.     Upon information and belief, Banco J.P. Morgan retains title to the property upon which the Project was to have been built.

**General Allegations**

53.     In or about mid-2006, Defendants commenced uniform marketing and promotion of a condominium-hotel resort to be located in the city of Tijuana, Baja California, Republic of Mexico, approximately 10 miles from the United States border and the city of San Diego, California, on a beachfront parcel known as "Punta Bandera." The project was called by the Defendants or otherwise known as the "Trump Ocean Resort Baja."

54.     The Project was marketed and sold to buyers, including Plaintiff and Members of the Class, as a partnership between Trump and Irongate.

55.     Trump and Irongate had previously partnered to develop and sell a similar condominium-hotel resort in Waikiki, Hawaii.

56.     Defendants issued a press release on November 10, 2006, advertising their successful partnership in developing the Waikiki property as part of their sales campaign for the Trump Ocean Resort Baja.

57.     Defendants adopted an aggressive marketing plan that at all times held out Defendant Trump as an active, equity investor in the Project and created the appearance that the Project would be run as part of Trump's portfolio of luxury real estate developments.

58.     Defendants' marketing campaign also held out both Trump and Irongate as the developers of the Project.

59.     All promotional material for the Project featured images of Trump and statements made by Trump that led potential buyers and class members to understand that Trump and his real estate empire was personally involved in the project.

60.     Defendants erected a billboard at the site of the Project featuring Trump's image and name, furthering promoting Trump's involvement in the Project.

61.     Numerous press releases remain available on the www.trump.com website that tout the Trump Ocean Resort Baja as an upcoming part of Trump's portfolio.  One such press release was dated as recently as June 23, 2008.

62.     Another such press release still available on the www.trump.com website, dated April 25, 2007, specifically states that the Project was "[d]eveloped as a **partnership** between The Trump Organization and Irongate, a Los Angeles-based real estate development and investment company…"

63.     All promotional material for the Project made statements and material omissions that led potential buyers to believe Irongate was the developer of the Project.

64.     Defendants marketing campaign included paid and promotional advertisements in national magazines and newspapers as well as press releases to national and regional media outlets.

65.     In addition, Defendant Trump, as well as well known representatives of his brand, his daughter Ivanka Trump ("Ivanka") and son Donald Trump, Jr. ("Donald, Jr."), made representations that Trump was personally involved in the Project.

66.     Ivanka appeared at a sales meeting for the Project and stated that Trump was personally involved in the Project and not merely a licensor of his name.

67.     Ivanka and Donald, Jr. made public statements that they were each purchasing units in the Project for themselves further supporting the appearance that the Project was a partnership between Trump and Irongate.

68.     Defendants represented to buyers, including Plaintiff and Members of the Class, that the Project was being developed, constructed, marketed, and sold by United States-based companies, specifically, the Irongate Defendants and the Trump Defendants.

69.     Because the "Trump Brand" is so intimately associated with luxury real estate development, the involvement of Trump was integral to the inducement to purchase a condominium unit in the Project.

70.     Because Irongate was marketed as a successful, US-based real estate development company, the involvement of Irongate was integral to the inducement to purchase a condominium unit in the Project.

71.     Buyers, including Plaintiff and Members of the Class, relied on the representations of the personal involvement of Trump in purchasing condominium units.

72.     Buyers, including Plaintiff and Members of the Class, relied on the representations of the personal involvement of Irongate in purchasing condominium units.

- 11 -

73.     In reality, unbeknownst to Class members, Trump, through Trump Marks and Trump Marks Baja, now claim that they "merely" licensed his name to the Irongate Defendants for use in the Project.

74.     Trump, Trump, Jr., and Ivanka all held financial interests in Trump Marks and Trump Marks Baja and thus benefited from buyers' purchases of condominium units by Plaintiff and Members of the Class.

75.     Plaintiff is informed and believes, and on that information and belief alleges, that the Irongate Defendants created PB Impulsores, a Mexican limited liability company, as a way to evade responsibility for the potential failure of the Project.

76.     Buyers, including Plaintiff and Members of the Class, were required to contract with PB Impulsores in order to purchase a condominium unit within the Project.

77.     None of the promotional materials for the Project indicated that the Project was run by PB Impulsores or was anything other than a partnership between Trump and Irongate.

78.     Defendants conducted an advertising campaign in national magazines and newspapers and in press releases that the Project was being developed by Trump and Irongate.

79.     Plaintiff and Members of the Class were led to believe they were buying a "Trump brand" property that would be a sound investment and commanded a premium price over similar developments.

80.     Defendants at all times during the marketing and sale of the Project maintained that they had secured financing for the construction of the Project. When, in reality, Defendants never obtained adequate financing for the Project.

81.     Buyers, including Plaintiff and Members of the Class, paid substantial sums of money to Defendants as deposits for units in the Project.

82.     Buyers, including Plaintiff and Members of the Class, were led to believe by Defendants that the deposit funds would be held in escrow and only released to Defendants for use in the construction of the Project.

83.     Buyers, including Plaintiff and Members of the Class, were led to believe by Defendants that funds would only be released from escrow upon satisfactory reports from the Fund Control Defendants.

84.     Defendants failed to property register the project and timely submit a "Statement of Record" to the U.S. Department of Housing and Urban Development ("HUD") prior to marketing the Project and selling condominium units within the Project.

85.     Defendants failed to provide Property Reports to Plaintiff and Members of the Class prior to entering into contracts and/or sales agreements with Plaintiff and Members of the Class for the purchase of condominium units within the Project.

86.     Defendants continued to withdraw from the funds paid as deposits despite their knowledge that they did not have sufficient financing to continue the Project. On information and belief, it now appears these funds were not used for legitimate building or development needs.

87.     After buyers, including Plaintiff and Members of the Class, paid deposits, Defendants sent "updates" implying that the construction of the Project was moving forward and ongoing, when in fact it was not.

88.     In or about December 2008, the Trump Defendants "revoked" the license for the Project to continue using the Trump name.

89.     In or about February 2009, Defendants informed buyers, including Plaintiff and Members of the Class, that no refunds would be issued. The communication also reported that all of the refundable deposit monies had been spent on the Project.

90.     Plaintiff is informed and believes, and on that information and belief alleges, that Defendants improperly spent and/or otherwise diverted the Class Members' deposit funds.

91.     Defendants fraudulently and deceptively used the Trump name in order to induce buyers, including Plaintiff and Members of the Proposed Class, to purchase units within the Project in reliance on the level of luxury and quality that has come to be associated with the Trump name.

92.     Defendants failed to properly safeguard the deposit funds held in escrow.

93.     Defendants failed to properly monitor the progress of the Project before releasing funds held in escrow.

94.     Defendants failed to provide a Property Report to buyers, as required by the Interstate Land Sales Full Disclosure Act, prior to the execution of sales agreements and deposit payments from buyers.

### Class Action Allegations

95.     Plaintiff brings this nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff brings this action on behalf of himself and a class of all other United States citizens similarly situated who paid a deposit to Defendants for use in the Trump Ocean Resort Baja project.

96.     The Class is so numerous that joinder of all members is impracticable. According to one letter from Defendants to Plaintiff, as of June 29, 2007, Defendants had "sold" 80 suites worth over $40 million.

97.     There are many common questions of law and fact involving and affecting the parties to be represented.  These common questions of law or fact predominate over any questions affecting only individual members of the Class.  Common questions include, but are not limited to, the following:

a.  Whether Defendants misrepresented the role of Trump in the development
of the Project;

b.  Whether Defendants misrepresented the role of Irongate in the
development of the Project;

c.  Whether Defendants misrepresented the role of PB Impulsores in the
Project;

d.  Whether Defendants engaged in deceptive and "unlawful," "unfair," or
"fraudulent" business and trade practices;

e.  Whether Defendants knowingly or negligently concealed or omitted
material information about the financial stability of the Project;

f.  Whether Defendants violated the Interstate Land Sales Full Disclosure
Act;

g.  Whether Defendants converted the deposit monies of Plaintiff and
Members of the Class;

h.  Whether the failure to construct and deliver the condominium units is a
breach of contract requiring the return of the deposit monies of Plaintiff
and Members of the Class.

98.      Plaintiff's claims are typical of the claims of the Class he seeks to represent in
that the named Plaintiff and all Members of the Class paid monies to Defendants as deposits on
condominium units in the Project that were never constructed and the monies were never
refunded.

99.      Plaintiff will fairly and adequately protect the interests of the Class and has

retained attorneys experience in class actions and complex litigation as his counsel.

100.      Plaintiff avers that the prerequisites for class action treatment apply to this

action and that questions of law or fact common to the Class predominate over any questions

affecting only individual members and that class action treatment is superior to other available

methods for the fair and efficient adjudication of the controversy that is the subject of this action.

Plaintiff further states that the interests of judicial economy will be served by concentrating

litigation concerning these claims in this Court, and that the management of this Class will not be

difficult.

## COUNT I

### Fraudulent Inducement

### On Behalf of Plaintiff and the Proposed Class Against Trump Defendants, Irongate Defendants and PB Impulsores

101.      Plaintiff repeats and realleges each and every allegation contained above as if

fully set forth herein.

102.      Defendants intentionally defrauded Plaintiff and Members of the Class in an

effort to induce Plaintiff and Members of the Class to enter into sales agreements for the

purchase of condominium units within the Project. Defendants deceived Plaintiff and Members

of the Class by the misrepresentations and statements described in this complaint.

103.      These false representations were made, authorized, adopted, or ratified by

Defendants, their principals, agents, or employees, with the intent to deceive Plaintiff and

Members of the Class and with the purpose of inducing Plaintiff and Members of the Class to

enter into sales agreements for condominium units within the Project, even though Defendants

knew the representations to be false.

- 16 -

104.    Plaintiff is informed and believes and thereon alleges that when said Defendants made the representations or engaged in the concealment of known facts, Defendants knew said representations to be false. The willful failure to disclose said information and the concealment of information herein alleged was done with the intent to defraud and deceive Plaintiff and Members of the Class, and to induce Plaintiff and Members of the Class to the purchase condominium units within the Project and to then shield Defendants from liability for the failed project.

105.    At the time Defendants made these representations and willfully failed to disclose the information, as alleged hereinabove, Plaintiff and Members of the Class were ignorant of the falsity of Defendants' representations and believed same to be true and accurate. Further, Plaintiff and Members of the Class were ignorant of the existence of the true facts not disclosed by Defendants. If Plaintiff and Members of the Class had been aware of the falsity of such representations, they would not have entered into the purchase agreements for the condominium units within the Project.

106.    Plaintiff and Members of the Class reasonably relied upon the representations of Defendants, and believed same to be true and accurate based on the overwhelming body of information provided to Plaintiff and Members of the Class by the Defendants, the Trump brand, the Defendants' reference to the successful Trump Waikiki project, as well as the widespread press releases and media coverage that fueled by the Defendants themselves.

107.    In doing the acts alleged herein, Defendants acted with oppression, fraud, and malice. Defendants were aware of the true facts concerning the interests of the principal parties and/or the falsity of their claims, and all other matters relative to and effecting the value and viability of the Project. Defendants failed to disclose same to the Plaintiff. In failing to disclose the true facts as known to them, Defendants acted with oppression, fraud, malice and in

conscious disregard for the rights of Plaintiff. Thus, Plaintiff is entitled to an award of exemplary damages in an amount sufficient to punish and set an example of Defendants, in addition to general and special damages according to proof.

## COUNT II

### Negligent Misrepresentation

### On Behalf of Plaintiff and the Proposed Class Against Trump Defendants, Irongate Defendants, and PB Impulsores

108.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

109.    When Defendants made the misrepresentations regarding the Project alleged herein to Plaintiff and Members of the Class, said Defendants knew to a substantial certainty that severe harm was likely to follow. Defendants had no reasonable ground for believing that the representations were true and Defendants made the representations negligently and with the intent to induce Plaintiff and Members of the Class to pay deposits and contract to purchase condominium units within the Project.

110.    Defendants should have known that their acts would and did cause Plaintiff and Members of the Class such extreme emotional distress.

111.    Plaintiff and Members of the Class relied upon said representations of Defendants, in the selection and contracting with Defendants to purchase a condominium unit within the Project.

112.    As a proximate result of Defendants' conduct, Plaintiff and Members of the Class has incurred attorney's fees, costs and other general and special damages in an amount according to proof.

113.    The actions of the Defendants described above show oppression, fraud and malice. Thus, the Defendants are liable for damages in an amount that will properly punish the

Defendants and to deter the defendants and others from similar conduct. The Defendants knew of the falsity of the overwhelming body of information provided to Plaintiff and Members of the Class by the Defendants, the Defendants' reference to the successful Trump Waikiki project, as well as the widespread press releases and media coverage which was, in large part, fueled by the Defendants themselves.

114.    Thus, the actions of the Defendants described above show oppression, fraud and malice. As a result, the Defendants are liable for damages in an amount that will properly punish the defendants and to deter the defendants and others from similar conduct.

## COUNT III

### Conversion

**On Behalf of Plaintiff and the Proposed Class Against Trump Defendants, Irongate Defendants, and PB Impulsores**

115.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

116.    At all times herein mentioned, Plaintiff and Members of the Class were the rightful and lawful owners of the sums which were deposited by buyers as deposits for the purchase of condominium units within the Project, as identified hereinabove (hereinafter "Buyer Deposits"), which existed in the escrow accounts set up as part of the subject transactions with Escrow Defendants. Plaintiff and Members of the Class were, at all times herein mentioned, entitled to immediate possession of such monies if such monies were not being used for proper purposes in accordance with the purchase agreements.

117.    Subsequent to the time that Plaintiff and Members of the Class made the Buyer Deposits, Defendants took possession of the Buyer Deposits with the intent to exercise control over same.

118.    As a direct and proximate result of Defendants wrongfully exercising control over Buyer Deposits, Plaintiff and Members of the Class were thereby deprived of their right of possession of the Buyer Deposits, all to the damage and detriment of Plaintiff and Members of the Class in an amount equal to the sums deposited by Plaintiff and Members of the Class, plus interest thereon according to proof at trial.

119.    At the time Defendants converted the property, Defendants were guilty of malice, oppression, and a willful and conscious disregard for the rights of Plaintiff and Members of the Class in that Defendants, failed to use the funds in accordance with the terms of the Agreement and Plaintiff's consent, and with reckless indifference and willful and conscious disregard for the rights and interests of the Plaintiff and Members of the Class in the converted property, did convert the property.

120.    Defendants, knowing the project would not proceed, continued to represent to Plaintiff and Members of the Class, and did so on numerous occasions, that they were, in fact, proceeding with the construction of the Project in order to allow Defendants the ability to delay Plaintiff's and Members of the Class' efforts to request and/or obtain refunds of their Buyer Deposits, which funds were no longer being used for the legitimate purposes of development of the project as called for in the contracts.

121.    By reason of these acts Plaintiff and Members of the Class have been oppressed and seek punitive and exemplary damages in an amount sufficient to punish Defendants and to deter similar future conduct.

## COUNT IV

### Declaratory Relief

### On Behalf of Plaintiff Against All Defendants

122.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

123.     A legal controversy has arisen with respect to the rights and obligations of Plaintiff and Members of the Class and Defendants, and each of them. Plaintiff alleges the true identity of the Developers are the Irongate Defendants and the Trump Defendants, and each of them, and both Trump and Irongate have denied this fact. Plaintiff further alleges that Defendants intend to utilize the corporate shell of the newly created entity, PB Impulsores, governed by the laws of Baja California, Republic of Mexico as a means to shield each of the actual Developers from liability under U.S. laws and responsibility for the failed project and the loss of all the funds deposited by the Plaintiff as purchasers of condominiums.

124.     Plaintiff further alleges that said Defendants, and each of them, by setting up a shell entity is now seeking to avoid liability being imposed on the true responsible parties, all in violation of the Interstate Land Sales Full Disclosure Act as alleged hereinbelow (15 U.S.C. § 1701, et seq.).

125.     Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendants including, but not limited to the Irongate Defendants and PB Impulsores were the agents and/or employees of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and/or employment.

126.     Plaintiff alleges that true and actual developers of the Project are and were the Irongate Defendants and the Trump Defendants and that by reason of the Defendants' misrepresentations and scheme to defraud Plaintiff and Members of the Class, said Defendants

- 21 -

should not be allowed to escape responsibility or liability under law, and that said defendants should be deemed to be the responsible parties with regard to the claims of Plaintiff and Members of the Class.

127.    Plaintiff further alleges that the entity created by Defendants, PB Impulsores, was really nothing more than the agent and/or alter ego of the Irongate Defendants, and that Plaintiff and Members of the Class relied on the representations, both oral and written, of said Defendants to induce Plaintiff and Members of the Class to enter into the Agreements alleged herein.

128.    At all times relevant hereto, each of the Irongate Defendants and PB Impulsores were the agents and/or alter egos of one another such that the actions of one should be deemed the actions of the others. Any contrary result and finding would countenance and sanction a fraud which was perpetrated upon and against the Plaintiff and Members of the Class, all as alleged hereinabove.

129.    An actual controversy exists as between Plaintiff and Members of the Class and the Irongate Defendants as to whether said Defendants should be found to be the actual Developers of the Project, and whether said Defendants should be held to be the Developers of the Project.

130.    An actual controversy exists as between Plaintiff and Members of the Class and the Trump Defendants as to whether said Defendants should be found to be the actual Developers of the Project, and whether said Defendants should be held to be the Developers of the Project.

131.    An actual controversy exists as between Plaintiff and Members of the Class and the Escrow Defendants as to whether said Defendants should be able to retain any funds paid into escrow in association to the Project.

- 22 -

132.     An actual controversy exists as between Plaintiff and Members of the Class and defendant Banco J.P. Morgan as to who should have title to the land upon which the Project was to be built.

## COUNT V

### Violation of the Interstate Land Full Disclosure Act, 15 U.S.C. 1703(a)(1)

### On Behalf of Plaintiff and Members of the Class Against Trump Defendants, Irongate Defendants, and PB Impulsores

133.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

134.     Under and pursuant to the definitions and interpretation of the Interstate Land Sales Full Disclosure Act ("ILSFDA" or the "Act"), the Trump Defendants, Irongate Defendants, and PB Impulsores are developers which is defined in 15 U.S.C. § 1701(5) of the Act as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision."

135.     Under and pursuant to the definitions and interpretation of the Act, the Trump Defendants, Irongate Defendants, and PB Impulsores are deemed Agents for the developers which are defined in 15 U.S.C. § 1701 (6) ("any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision.") Defendants represented or acted for or on behalf of each other, and each of them, in selling, leasing or offering to sell or lease condominiums in the Project.

136.     The sale of the condominiums by the Defendants to Plaintiff and Members of the Class was a prohibited sale as defined in 15 U.S.C. § 1703(a)(1). Defendants were required to comply with the registration and disclosure requirements of 15 U.S.C. § 1703(a)(l)(B),(C) and (D) before selling any condominium to a Class Member.  Defendants failed to comply with the registration and disclosure requirements.

137.     Pursuant to 15 U.S.C. 1703(a) of the Act, Defendants were prohibited from making use of any means of instruments of transportation or communications and interstate commerce, or the mails in connection with the sale of any real property unless a printed property report meeting the requirements of the ILSFDA was furnished to a purchaser in advance of the signing of the contract or agreement for sale by the purchaser.

138.     Plaintiff alleges that Defendants violated the Act in a manner consistent with the requirements under 15 U.S.C. § 1701(8) and 15 U.S.C. § 1703(a). The sales of the condominiums were not exempt pursuant to 15 U.S.C. § 1702(b)(1).

139.     Class Members executed Agreements to Purchase prior to being provided a Property report and demand damages against Defendants including but not limited to rescission of the contract of purchase, the return of the principal amount of any payments made to Defendants, interest, court costs, and reasonable amounts for attorney's fees pursuant to 15 U.S.C. § 1709(c).

## COUNT VI

### Violation of the Interstate Land Full Disclosure Act
### 15 U.S.C. § 1703(d)(3) - Right of Revocation

### On Behalf of Plaintiff and Members of the Class
### Against Trump Defendants, Irongate Defendants, and PB Impulsores

140.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

141.     The sale of the condominiums by Defendants to Members of the Class who were provided a Property Report was still a prohibited sale as defined in 15 U.S.C. § 1703(a)(1). Defendants were required to comply with the registration and disclosure requirements of 15 U.S.C. § 1703(a)(1)(B),(C) and (D) before selling any condominium to any Class Member. Defendants failed to comply with the registration and disclosure requirements as alleged hereinabove.

142.     Pursuant to 15 U.S.C. 1703(a) of the ILSFDA, Defendants were prohibited from making use of any means of instruments of transportation or communications and interstate commerce, or the mails in connection with the sale of any real property unless a printed Property Report meeting the requirements of ILSFDA is furnished to a purchaser in advance of the signing of the contract or agreement for sale by the purchaser. Plaintiff alleges that Defendants violated 15 U.S.C. § 1701(8) and 15 U.S.C. § 1703(a). The sales of the condominiums were not exempt pursuant to 15 U.S.C. § 1702(b)(1).

143.     The sale of the condominiums by Defendants to any Class Member who were provided a Property Report as more particularly alleged hereinabove, was a prohibited sale as defined in 15 U.S.C. § 1703(d)(3). The contracts entered into between Defendants and Class Members who purchased the condominiums after Defendants' HUD registration, fail to provide required terms and conditions for the return of said Class Members' monies.

144.     The subject contracts executed on or after Defendants' HUD registration fail to provide for a refund to the Purchaser which remains after subtracting 15 per cent of the purchase price, excluding any interest owed from the amount paid by the purchaser with respect to the purchase price, excluding any interest.

145.     Pursuant to 15 U.S.C. § 1703(d)(3)(A)(B), Defendants' failure to provide language in the contract for such a refund is a violation of the ILSFDA. Such a violation allows the buyer the option to revoke the contract for a period of up to two (2) years after execution of the contract.

146.     The Plaintiff and Members of the Class demand damages against Defendants, and each of them, including but not limited to revocation of the contract of purchase, interest, court costs, and reasonable amounts for attorney's fees pursuant to 15 U.S.C. § 1709(C).

147.     As a proximate result of the foregoing acts and omissions, Plaintiff and the other members of the Class have suffered damages.

## COUNT VII

### Violation of the Interstate Land Full Disclosure Act, 15 U.S.C. 1703(a)(2)(A)(B)(C)-The Sale of Condominiums While Employing a Device, Scheme or Artifice to Defraud, Deceit and Untrue Statements of Material Fact

### On Behalf of Plaintiff and Members of the Class Against Trump Defendants, Irongate Defendants, and PB Impulsores

148.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

149.     Defendants engaged in activities prohibited by 15 U.S.C. § 1703(a)(2).

150.     Defendants used interstate commerce and the mails for the purpose of using the registration requirements of HUD as an artifice and device to obtain money from Plaintiff and Members of the Class all in violation of ILSFDA as alleged hereinbelow. Defendants sought to further legitimize their sale scheme by making it appear to Class Members that not only were they dealing with Trump, a renowned U.S. real estate magnate, Irongate, an accomplished U.S. developer who had worked hand in hand with Trump, U.S. escrow holders, and U.S. banks, but also that the transactions fell within the ambit, were governed by, and would be enforced under both California and U.S. laws.

151.     Plaintiff alleges that Defendants failed to disclose and willfully suppressed the fact that Trump and Irongate were in fact not the developers of the subject project and were not substantial equity investors in the development of same and/or would simply "cash-out" the inside investors in the event of any financial problems with the Development.

152.     Plaintiff further alleges that Defendants initially failed to comply with the registration and disclosure requirements of ILSFDA and HUD. After selling numerous condominiums to Plaintiff and Members of the Class, Defendants reversed course and sought to

belatedly comply with the registration and disclosure requirements of ILSFDA and HUD.

Thereafter, knowing the development was in violation of ILSFDA, the Defendants, in an effort

to cover up their scheme to defraud the Plaintiff, halted sales of condominiums for a period of

time in order to register the subject project with HUD.

153.     In so doing, Defendants perpetuated their scheme to defraud Plaintiffs and

Members of the Class by requiring Members of the Class to sign subsequent agreements as

alleged hereinbelow. These subsequent agreements were represented to Class Members as being

the same as the original agreements but simply now, for their protection, contained certain

information about HUD and that HUD requested that new agreements be signed by the Buyer-

Class Members. In fact, Defendants were changing the material terms of the original agreement,

without so informing the Buyers, and, eliminating many rights and remedies previously afforded

to the buyers under ILSFDA and HUD.

154.     During the time period wherein Defendants attempted to register the

development with HUD, said Defendants further misrepresented to HUD in the Statement of

Record that no condominiums had been sold prior to registration. Such representation was false.

At the time of filing said Statement of Record, Defendant Developers had sold over 100

condominiums to Members of the Class.

155.     All the while, Defendants continued to misrepresent to Plaintiff and Members

of the Class that the development did not need to be registered with HUD and the Defendant

Developers were doing so to show their "commitment" to the homeowners. Defendants further

misrepresented to Plaintiff and Members of the Class that HUD "requested" Defendants to

"update your original promise agreement" to include a reference to the HUD report. In fact,

Defendants recognizing that it failed to properly register with HUD and was in violation of

ILSFDA, prepared new contracts for Class Members to sign that now were purportedly

compliant with ILSFDA. Defendants never disclosed the true purpose of the need to sign new agreements and instead misrepresented to Class Members that the original contract needed to be "updated."

156.    Class Members, not knowing the true facts of the violations of ILSFDA and the HUD requirements and believing the representations of Defendants as true, signed and executed the "update" to the original promise.

157.    The actions by Defendants as alleged hereinabove are in violation of 15 U.S.C. § 1703(a)(2)(A), (B) and (C) and sought to utilize the registration and disclosure requirements of ILSFDA in this deceitful manner so as to secure further payments by Class Members into the development.

158.    As such, Class Members are entitled to damages against the Defendants in accordance with 15 U.S.C. § 1709(a).

159.    Plaintiff and Class Members demand damages against Defendants, and each of them, including but not limited to rescission of the contract of purchase, the return of the principal amount of any payments made to defendants, interest, court costs, and reasonable amounts for attorney's fees pursuant to 15 U.S.C. § 1709(c).

## COUNT VIII

### Fraud – HUD Registration

#### On Behalf of Plaintiffs and Members of the Class
#### Against Trump Defendants, Irongate Defendants, and PB Impulsores

160.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

161.    Defendants knowingly engaged in activities prohibited by 15 U.S.C. § 1703(a)(2).

162.     Defendants used interstate commerce and the mails for the purpose of using the registration requirements of HUD as an artifice and device to obtain money from Plaintiff and Members of the Class all in violation of ILSFDA as alleged hereinbelow. Defendants sought to further legitimize their sale scheme by making it appear to Buyers not only were they dealing with Trump, a renowned U.S. real estate magnate, Irongate, an accomplished U.S. developer who had worked hand in hand with Trump, a U.S. escrow holder, and U.S. banks, but also that the transactions fell within the ambit, were governed by, and would be enforced under both California and U.S. laws.

163.     Plaintiff alleges that Defendants failed to disclose and willfully suppressed the fact that Trump and Irongate were in fact not the developers of the subject project and were not substantial equity investors in the development of same and/or would simply "cash-out" the inside investors in the event of any financial problems with the development.

164.     Plaintiff further alleges that Defendants initially failed to comply with the registration and disclosure requirements of ILSFDA and HUD. After selling numerous condominiums to Class Members, Defendants reversed course and sought to belatedly comply with the registration and disclosure requirements of ILSFDA and HUD. Thereafter, knowing the development was in violation of ILSFDA, Defendants, in an effort to cover up their scheme to defraud the Plaintiff and Members of the Class, halted sales of condominiums for a period of time in order to register the subject project with HUD.

165.     In so doing, Defendants perpetuated their scheme to defraud Plaintiff and Member of the Class by requiring Class Members to sign subsequent Agreements as alleged hereinbelow. These subsequent Agreements were represented to the buyers as being the same as the original Agreements but simply now, for their protection, contains certain information about HUD and that HUD requested that new agreements be signed by the Buyers. In fact, Defendants

were changing the material terms of the original Agreement, without so informing the Buyers, and, eliminating many rights and remedies previously afforded to the Buyers under ILSFDA and HUD.

166.      During the time period wherein Defendants attempted to register the development with HUD, Defendants further misrepresented to HUD in the Statement of Record that no condominiums had been sold in the subdivision prior to registration. Such representation was false. At the time of filing said Statement of Record, Defendants had sold over 100 condominiums to Class Members.

167.      All the while, Defendants continued to misrepresent to Plaintiff and Members of the Class that the development did not need to be registered with HUD and that Defendants were doing so to show their "commitment" to the homeowners. Defendant Developers further misrepresented to Class Members that HUD "requested" the Defendant Developers "update your original promise agreement" to include a reference to the HLJD report. In fact, Defendants recognizing that they failed to properly register with HUD and were in violation of ILSFDA, prepared new contracts for Class Members to sign that now were purportedly compliant with ILSFDA. Defendants never disclosed the true purpose of the need to sign new agreements and instead misrepresented to the Class Members that the original contract needed to be "updated."

168.      Class Members, not knowing the true facts of the violations of ILSFDA and the HUD requirements and believing the representations of Defendants as true, signed and executed the "update" to the original promise.

169.      Defendants further relied heavily upon legitimizing their sale scheme by representing to the Buyers not only were they dealing with Trump, a renowned U.S. real estate magnate, Irongate, an accomplished U.S. developer who had worked hand in hand with Trump, a

U.S. Escrow Holder, and U.S. banks, but also that the transactions fell within the ambit, were governed by, and would be enforced under both California and U.S. laws.

170.    Second, in addition various disclosures and documents provided to the Buyers by the defendants, Defendants provided to Plaintiff and Members of the Class and also required that they execute what was described as a "HUD Agreement." Though Defendants have, subsequent to the time that Plaintiff and Members of the Class entered into the purchase and sales transactions for their units, now denied that the Plaintiff and Members of the Class had contracted with any entity which is subject to the laws of the United States, the HUD Agreement was just another element of the artifice employed by the Defendants to imply to Plaintiff and Members of the Class that the Sellers and the Project were subject to jurisdiction under the auspices of the U.S. Department of Housing and Urban Development and U.S. law. Within the HUD disclosures provided to the Buyers, Buyers were advised that: "If representations are made to you which are contrary to those in the Report, please notify the: Office of Interstate Land Sales Registration HUD Building, 451 Seventh Street, S.W. Washington, D.C. 20410."

171.    At all times, however, the Defendants knew that they were setting up a scheme whereby they thought they would shield themselves from any exposure or enforcement under U.S. laws by setting up a foreign entity (i.e., PB Impulsores), which, in the event of failure of the Project, would be left a foreign shell entity that, even if it were subject to jurisdiction within the United States, would be a judgment-proof, entity, with no assets.

172.    The use of the California Disclosures form and HUD form Agreement were part of the scheme on the part of the Defendants to further give the illusion of legitimacy to the Project under U.S. laws, and to instill confidence in the buyers of the units that they would somehow be protected and/or sanctioned under U.S. law.  The Defendants' use of these techniques, to include the direct end specific involvement of Trump and the Trump Defendants

and the Irongate Defendants as well as the inclusion of laws, Agreements and Disclosures which implied applicability and protection of U.S. Laws, at all times during the sales process, acted so as to create and reinforce the belief and confidence of the Plaintiff and Members of the Class that they were dealing with American companies and individuals in Defendants Irongate and its principals, including Defendants Grosfeld and Fisher, as well as with Defendant Trump, and that the Plaintiff would have and enjoy the protections afforded under the laws of California and the United States as prominently referred to in the contract documents, just as the Plaintiff and Members of the Class were relying on the presence and standing of the Trump and Irongate Defendants and their principals.

173.    Plaintiff alleges that when said Defendants made the representations and/or engaged in the concealment of known facts as alleged hereinabove, each knew said representations to be false and these representations and willful failure to disclose said information and the suppression of information herein alleged were and was done by Defendants with the intent to defraud and deceive Plaintiff and Members of the Class and to induce said them to purchase in the Project.

174.    At the time these representations and accompanying willful failure to disclose and suppression of information alleged hereinabove were/was made, Plaintiff and Members of the Class were ignorant of the falsity of Defendants' representations and believed same to be true and accurate. Plaintiff and Members of the Class were also ignorant of the existence of the true facts not disclosed and willfully suppressed by Defendants. If Plaintiff and Members of the Class had been aware of the falsity of such representations and the existence of the facts not disclosed by Defendants, Plaintiff and Members of the Class would not have purchased a condominium in the Project.

175.     Plaintiff reasonably relied upon the representations of Defendants and believed same to be true and accurate. In actuality, Defendants, prior to the sale of the units within the Project, knew it was going to take a position opposite to that which was being presented to Plaintiff and Members of the Class in the event Defendant Developers could not complete the project.

176.     In doing the acts alleged herein, Defendants acted with oppression, fraud and malice. Thus, Plaintiff and Members of the Class are entitled to an award of exemplary damages in an amount sufficient to punish and set an example of Defendants in addition to general and special damages according to proof.

### COUNT IX

### Negligence

### On Behalf of Plaintiff and Members of the Class
### Against Trump Defendants, Irongate Defendants, and PB Impulsores

177.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

178.     Defendants owed Plaintiff and Members of the Class a duty of due care in the manner in which they used the deposit funds paid by Plaintiff and Members of the Class in the development of the Project, to include the manner in which they executed the construction, financed and/or took steps to finance the construction, planned, and promoted the Project.

179.     Plaintiff alleges that Defendants breached their duty of due care by squandering all of the monies deposited with Defendants by Plaintiff and Members of the Class and by directing portions of said monies earmarked for use in the development of the Project for wasteful expenditures and/or for their own use and benefit, all to the financial detriment of Plaintiff and Members of the Class.

180.     As a direct and proximate result of the conduct of said Defendants Plaintiff and Members of the Class have suffered damages as more particularly alleged hereinabove, including all deposits made to defendants, and each of them, and other special and general damages according to proof at trial.

## COUNT X

### Injunctive Relief

### On Behalf of Plaintiff and Members of the Class Against All Defendants

181.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

182.     Plaintiff is without any adequate remedies at law which would prevent the Escrow Defendants and Banco J.P. Morgan from taking any action that would permanently injure Plaintiff and Members of the Class and prejudice their rights as they relate to the real property upon which the Project was to be built and any funds remaining in escrow.

183.     Plaintiff alleges that due to the wrongdoing on the part of Defendants as alleged hereinabove, Defendants should be enjoined both during the pendency of this Action, and permanently, from taking any action which is adverse to the interests of the Plaintiff and Members of the Class, including, but not limited to the foreclosure on or transfer of any of the interests in and to the real property upon which said Defendants hold an interest as a lien holder, upon which the subject Project was to be built.

184.     Plaintiff alleges that due to the wrongdoing on the part of Defendants as alleged hereinabove, Defendants should be enjoined both during the pendency of this Action, and permanently, from taking any action which is adverse to the interests of the Plaintiff and Members of the Class, including, but not limited to the foreclosure on or transfer of any of the buyer's deposit funds held in escrow.

185.     To the extent that Defendant Banco J.P. Morgan's interests are, or may be hostile to the rights of the Plaintiff and Members of the Class, Banco J.P. Morgan should also be enjoined both during the pendency of this action, and permanently, from taking any action which is adverse to the interests of the Plaintiff and Members of the Class, including, but not limited to taking an adverse and/or hostile position to that of the Plaintiff in any proceedings relating the real property upon which said the subject Project was to be built.

**COUNT XI**

**Unjust Enrichment**

**On Behalf of Plaintiff and Members of the Class**
**Against Trump Defendants, Irongate Defendants, and PB Impulsores**

186.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

187.     Plaintiff and Members of the Class conferred upon Defendants non-gratuitous payments for condominium units that were never constructed. Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and Members of the Class, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, Plaintiff and members of the Class were not receiving any benefit.

188.     Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and Members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

189.     Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and Members of the Class is unjust and inequitable, Plaintiff and Members of the Class are entitled to, and hereby seek disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits in a manner established by the Court.

## Count XII

### Unlawful, Unfair or Fraudulent Business Acts and Practices in Violation of Cal. Bus. & Professions Code §17200, *et. seq.*

### On Behalf of Plaintiff and Members of the Class Against Trump Defendants, Irongate Defendants, and PB Impulsores

190.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

191.     Defendants' acts and practices as detailed herein constitute acts of unfair competition. Defendants have engaged in unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business & Professions Code § 17200, *et seq.*

192.     Cal. Bus. & Prof. Code § 17200, *et seq.*, applies to the claims of all Class Members, regardless of their state of citizenship, because numerous entity defendants are organized under the laws of the state of California, numerous defendants are citizens of California, numerous defendants have their principal places of business in California, and the sales events for the Project occurred in the state of California.

193.     Accordingly, Defendants availed themselves of the protections of the laws of the state of California and it is not an unfair prejudice for Defendants to be subjected to the laws of the state of California. Further, California has an interest in its laws being applied to Defendants who violate the law within the state and without the state when that conduct has impact within California.

194.     Defendants engaged in unlawful business acts that violated Cal. Bus. & Prof. Code § 17200, *et seq.*, by fraudulently inducing Plaintiff and Members of the Class into paying deposits for and contracting to purchase condominium units in the Project based on their representations of the involvement of Trump Defendants and Irongate Defendants.

195.     Defendants engaged in unlawful business acts that violated Cal. Bus. & Prof. Code § 17200, *et seq.*, by fraudulently inducing Plaintiff and Members of the Class into paying

- 36 -

deposits for and contracting to purchase condominium units in the Project based on their representations that the deposits paid would be used for construction of the Project and refunded if Defendants failed to complete the project.

196.     Defendants engaged in unlawful business acts that violated Cal. Bus. & Prof. Code § 17200, *et seq.*, by failing to comply with the Interstate Land Sales Full Disclosure Act as discussed above.

197.     Defendants' failure to comply with the relevant statutes, regulations, and common law constitutes an unlawful business act or practice.

198.     Cal. Bus. & Prof. Code § 17200, *et seq.*, prohibits any "unfair business act or practice." Defendants engaged in "unfair" business acts and practices, as described above, by deceptively marketing the Project as a partnership between Trump and Irongate. The unfairness of Defendants' actions outweighs any business justification, motive, or reason. Further, Defendants' actions were immoral, unethical, unscrupulous, offended public policy, and injured Plaintiff and Members of the Class.

199.     Cal. Bus. & Prof. Code § 17200, *et seq.*, prohibits any "fraudulent business act or practice." Defendants engaged in "fraudulent" business acts and practices, as described above, by misrepresenting their role in the development of the Project and by retaining deposits paid by Plaintiff and Members of the Class.

200.     Cal. Bus. & Prof. Code § 17200, *et seq.*, prohibits any "unfair, deceptive, untrue, or misleading advertising." Defendants has engaged in unfair, deceptive, untrue, and misleading advertising by representing the involvement of Trump and the Trump Defendants as well as Irongate in all advertisements and press releases concerning the Project.

201.     Plaintiff and Members of the Class were deceived by Defendants' representations regarding Defendants' role in the Development, the progress of the Project, and

- 37 -

the ability of buyers to get their deposits back in the event of Defendants' failure to finish the Project.

202.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks and order enjoining Defendants from future such conduct and any other such orders that maybe necessary to rectify the unlawful, unfair, and fraudulent business practices of Defendants, including the appointment of a receiver and restoring to any person in interest any money paid as a deposit for or installment of a purchase of a condominium unit at the Project.

### Count XIII

### Breach of Contract

**On Behalf of Plaintiff and Members of the Class**
**Against Trump Defendants, Irongate Defendants, and PB Impulsores**

203.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

204.     Plaintiff and Members of the Class contracted to purchase condominium units from Defendants in the Project.

205.     The sales contracts entered into by Plaintiff and Members of the Class provided for the refund of deposits in the event of Defendants failure to construct and deliver the Project.

206.     While Defendants did fail to construct and deliver the project, Defendants breached the sales agreement contract and no refund of Plaintiff's and Member of the Class' deposits was made.

207.     As a result of Defendants' breach Plaintiff and Members of the Class have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for judgment against Defendants as follows:

A.      Certifying this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed class described herein and designating Plaintiff's Counsel as Lead Counsel for the Class;

B.      Awarding declaratory and injunctive relief as permitted by law or equity pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure to assure that the Class has an effective remedy, including, but not limited to:

1.      Enjoining Defendants from continuing the unlawful practices as set forth herein;

2.      Ordering Defendants to engage in a corrective advertising campaign;

3.      Ordering Defendants to implement a program to dispose of all affected products that will minimize the risk of future public safety hazards, and publicizing the same;

4.      Ordering Defendants to develop improved quality control measures to ensure consumer safety; and

5.      Directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

C.      Awarding costs of testing of used Toxic Toys and an initial medical assessment to detect possible injury to Plaintiff and members of the Class;

D.      Awarding the cost of safely disposing of the Toxic Toys;

E.      Awarding the cost of reasonable monitoring and appropriate treatment for those Class members who are identified as persons exposed to asbestos;

F.      Awarding reimbursement to Class members for the amounts they paid for the Toxic Toys;

G.      Awarding any statutory and/or punitive damages as to counts for which they are available under applicable law and in such amounts as the Court deems just and proper;

- 39 -

H. Awarding all costs, including experts' fees and attorneys' fees and expenses, and the costs of prosecuting this action; and

I. Awarding such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: __7__ June, 2009

WHATLEY, DRAKE & KALLAS, LLC
JOE R. WHATLEY, JR.
EDITH M. KALLAS
1540 Broadway, 37th Floor
New York, NY 10036
Telephone: 212/447-7070
212/447-7077 (fax)

AUDET & PARTNERS, LLP.
William M. Audet
221 Main Street, Suite 1460
San Francisco, California 94105
415.568.2555
415.568.2556 (Fax)
waudet@audetlaw.com

*Attorneys for Plaintiff*